| | |
|---|---|
| SAFCO PRODUCTS CO., | Civil No. 08-4918 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| WELCOM PRODUCTS, INC.; JOHN EVANTHES; KERRY WELSH; and YANG JIAN SHUNHE INDUSTRIAL CO., LTD., | |
| Defendants. | |

Thomas J. Donovan, **BARNES & THORNBURG LLP**, One North Wacker Drive, Suite 4400, Chicago, IL 60606, for plaintiff.

James R. Hietala, Jr. and Dennis C. Bremer, **CARLSON CASPERS VANDENBURGH & LINDQUIST**, 225 South Sixth Street, Suite 3200, Minneapolis, MN 55402, for defendants.

Plaintiff Safco Products Co. alleges that WelCom Products, Inc., Kerry Welsh, John Evanthes, and Yang Jian Shunhe Industrial Co. (collectively, "defendants"), directly infringed, contributorily infringed, and/or induced the infringement of United States Patent No. D522,708. After the parties completed jurisdictional discovery regarding the individual defendants' contacts with Minnesota and WelCom's observance of corporate formalities, Welsh and Evanthes filed a motion to dismiss for lack of personal jurisdiction and for improper venue. For the reasons discussed below, the Court denies the motion.

## BACKGROUND

Safco Products, Co. ("Safco") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. (First Am. Compl. ¶ 1, Docket No. 43.) On June 6, 2006, Thaler International ("Thaler") obtained United States Patent No. D522,708 (the "'708 patent") for a particular folding pushcart. (*Id.* ¶ 10.) On November 23, 2007, Thaler transferred all rights and interest in the '708 patent to Safco. (*Id.* ¶ 11.) Safco markets and sells carts that fall within the scope of the '708 patent. (*Id.* ¶ 13.)

WelCom Products, Inc. ("WelCom") is a California corporation with its principal place of business in California. (*Id.* ¶ 2; Answer to First Am. Compl. ¶ 2, Docket No. 44.) Kerry Welsh is WelCom's President and owns 81% of the company. (Welsh Dep.[1] at 27, Wappel Aff., Ex. K, Docket No. 71.) John Evanthes is WelCom's Vice President of Sales and owns the remaining 19% of the company. (*Id.*) Both Welsh and Evanthes are California residents. The First Amended Complaint alleges that WelCom makes, sells, and offers for sale certain pushcarts – including the MCX Magna Cart – that fall within the scope of the '708 patent. (First Am. Compl. ¶ 17, Docket No. 43.) On September 28, 2007, before transferring the '708 patent to Safco, Thaler sent WelCom a cease and desist letter regarding the '708 patent. (*Id.* ¶ 15.)

---

[1] Much of the evidence relating to the motion to dismiss comes from the depositions of Welsh and Evanthes. Welsh was deposed on March 23, 2009, and again on October 14, 2009, as Welcom's Rule 30(b)(6) representative. (Wappel Aff., Exs. J, K, Docket No. 71.) Evanthes was deposed on October 29, 2009. (*Id.* Ex. A.) The Court hereinafter cites these depositions as "Welsh Dep.," "30(b)(6) Dep.," and "Evanthes Dep.," respectively.

**I. Welsh's Contacts with Minnesota**

From May through July 2008, after Thaler had transferred the patent to Safco, Welsh sent several emails to Safco and had at least one conference call with Safco. On May 27, 2008, Welsh sent an email to Dave Kohner, General Counsel at Liberty Diversified, which was then Safco's parent company, suggesting "options that can be explored between WelCom products and Safco." (Wappel Aff., Ex. L, Docket No. 71.) Welsh suggested that "the Thaler patent . . . be used to pressure Home Depot (and others) to drop Gleason as their supplier. If Safco does not want to spend the legal fees, WelCom products will agree to pay all legal costs." (*Id.* at 2.) He asked Kohner for permission "to use the ['708] patent to police the market," and stated that he was open "to exploring possible areas of cooperation[] with Safco, including making the Magna Cart a line extension for Safco, either by Safco buying the Magna Cart from WelCom, or even an acquisition of WelCom." (*Id.*)

A chain of emails dated June 15, 2008, and June 16, 2008, shows that Welsh scheduled and then rescheduled a conference call with Steve Greseth and Pam LaFontaine at Safco. (Wappel Aff., Ex. M, Docket No. 71.) The call took place on June 16, and in a follow-up email later that day, Welsh acknowledged Thaler's cease and desist letter. (*Id.* at 1.) In that email, Welsh made the following proposal to Safco:

> So I hope that WelCom and Safco can keep the US design patent information to ourselves, and work together to keep knockoffs out of the US market, especially Gleason, who we have reported to US Customs for import fraud, and are also notifying their customers. . . .
> The sales of WelCom's "Magna Cart" line of folding carts . . . are exploding in the US and around the world. We continue to add major US retailers and that market leadership should continue as the Magna Cart is

the only Chinese mini-hand truck (to our knowledge) that has been granted exemption by the US Dept of Commerce from the . . . 346% anti-dumping duty.

Anyway, thanks again for the chat. I look forward to exploring areas of mutual interest and possible cooperation between our companies.

(*Id.* at 1-2.)

On July 16, 2008, Welsh emailed Greseth, LaFontaine, and Kohner. (Wappel Aff., Ex. N, Docket No. 71.) The email stated that Welsh had just left Greseth a voicemail and that "WelCom has just learned that Gleason Industrial has sold Costco USA a very large [quantity] of small hand trucks that are 99.6% likely to be an infringement of your US design patent." (*Id.*) Welsh wrote that "in light of this new development it makes little sense for WelCom to proceed with actions to nullify the patent." (*Id.*) He added, "We hope that Safco will defend its patent against these Gleason jerks. And please know that if legal costs are a consideration, WelCom . . . will contribute if requested." (*Id.*)

On August 12, 2008, Safco filed a complaint against WelCom and Gleason Corporation.[2] (Docket No. 1.) Safco filed its First Amended Complaint on May 21, 2009.

Soon after Safco filed the original complaint in August 2008, Welsh traveled to Minnesota to meet with Safco. (30(b)(6) Dep. at 53.) At this meeting, Welsh "told them [to] sign over the ['708] patent to [WelCom]. That's what I insisted upon at that

---

[2] Gleason settled with Safco and Safco stipulated to Gleason's dismissal with prejudice. (Docket Nos. 16-17.)

meeting." (Welsh Dep. at 157.) Welsh offered Safco $1,000 for the patent so that "WelCom [could] use the patent to police the market" for infringers. (*Id.* at 157, 160.)

Immediately after this meeting at Safco, Welsh drove to a customer's office to make a sale. (30(b)(6) Dep. at 53.) In his deposition testimony, Welsh stated that he could not recall the name of the customer, but he described this customer as a large industrial distributor located several hours outside Minneapolis. (Welsh Dep. at 161.) During this sales call, Welsh demonstrated the MCX Magna Cart. (30(b)(6) Dep. at 52.)

## II.  Evanthes' Contacts with Minnesota

Evanthes and his wife are sole owners of a company that sells exclusively WelCom products. (Evanthes Dep. at 6-8.) Evanthes sold carts that allegedly infringe the '708 patent to Northern Tool + Equipment ("Northern Tool"), headquartered in Burnsville, Minnesota. (*Id.* at 29.) Evanthes testified in his deposition that he was aware that Northern Tool's headquarters are in Minnesota. (*Id.* at 19.) In soliciting the sales, Evanthes personally accessed Northern Tool's vendor portal on the internet. (*Id.* at 28.) He corresponded by email with Northern Tool employees and representatives. (*Id.* at 28–29.) In one of the emails, Evanthes stated, "Here are the product information forms for the MCX Magna Cart, both domestic and import." (*Id.* at 30.) Evanthes knew that Northern Tool was likely to sell the offending carts at the Minnesota State Fair. (*Id.* at 30–31.) Evanthes' LinkedIn profile discloses that he "[d]eal[s] with on all matters marketing and sales with some of the largest retail concerns in the world," and lists Northern Tool among those companies. (*Id.* at 10-11, 19.)

Evanthes solicited sales from Fastenal, a corporation headquartered in Winona, Minnesota. (Wappel Aff., Ex. G, Docket No. 71.) He exchanged emails with a Fastenal representative introducing the Magna Cart and providing pricing information pursuant to a follow-up request. (Wappel Aff., Ex. C, Docket No. 71.) He sent emails to the Fastenal representative asking how to "stimulate business there at Fastenal?" and how best to "put [Fastenal's] mass/scale to work selling Equiprite/Magna Carts?" (Wappel Aff., Ex. D, Docket No. 71.) As a result of Evanthes' efforts, Fastenal sold between 14 and 94 Magna Carts per month in the first half of 2009. (*Id.* at 1.) Evanthes' LinkedIn profile also lists Fastenal among the companies he deals with. (Evanthes Dep. at 19.)

Evanthes also reached out to Target Corporation, which has its headquarters in Minnesota, in an unsuccessful effort to sell the Magna Cart. He sent at least three emails to Cynthia Fong, a Target buyer, and left Fong at least one "overly long" voicemail. (*Id.* at 11; Wappel Aff., Ex. B at 4, Docket No. 71.) On September 4, 2007, he emailed Fong, stating that WelCom "make[s] the uniquely innovative and useful Magna Cart(tm) line of hand trucks." (Wappel Aff., Ex. B. at 4, Docket No. 71.) In a follow-up email dated September 12, 2007, Evanthes stated, "Hopefully the sample of the Magna Cart Personal Hand Truck made it's [sic] way to your desk. . . . UPS shows it was delivered yesterday morning." (*Id.* at 3.) Fong confirmed that she received the cart, and Evanthes provided pricing information. (*Id.* at 2-3.) On April 8, 2008, Evanthes sent Fong an email attaching several photographs of the cart. (*Id.* at 1.) Evanthes' LinkedIn profile also lists Target among the companies he deals with. (Evanthes Dep. at 19.)

### III. WelCom's Corporate Form

Welsh testified that he is an officer of WelCom. (Welsh Dep. at 37.) When asked to identify WelCom's directors, he responded, "I think only me. Maybe my wife is on there." (*Id.* at 38.) He testified that Evanthes is not an officer of WelCom. (*Id.* at 37.) He testified that the last WelCom board meeting took place "last year. I don't remember when," and that it took place at his home. (*Id.* at 38.) He could not recall sending out a notice of the most recent board meeting and he did not recall the topic of the meeting. (*Id.*) He testified that WelCom has an annual shareholders' meeting because "[i]t's a legal requirement." (*Id.* at 39.) He testified that he receives a salary from WelCom, and when asked whether he is eligible for a bonus, he replied, "You call it a bonus, commission bonus, whatever, sure. I own the company. I do what I want with the money." (*Id.* at 41-42.)

Evanthes testified that he has attended shareholders' meetings for WelCom, and that "[i]t's pretty simple because it's just us two now." (Evanthes Dep. at 51.) He could not recall when the last shareholders' meeting took place. (*Id.* at 51-52.) When asked how many corporate officers WelCom has, Evanthes testified, "I would have to look at the paperwork . . . . But as co-owners and the only two with skin in the game, I would think [Welsh] and myself are the only listed officers." (*Id.* at 52.) Evanthes receives a dividend or a distribution of profits from WelCom. (*Id.* at 54.) As Vice President of Sales, Evanthes is "primarily involved with anything sold by WelCom . . . to retail or nonretail markets, anywhere in the world." (*Id.* at 8.) He "make[s] sales as well as oversee[s] . . . the few percent of sales made by sales reps." (*Id.*)

**ANALYSIS**

I. **STANDARD OF REVIEW**

When a party challenges personal jurisdiction under Rule 12(b)(2), and where, as here, the parties have conducted jurisdictional discovery, the plaintiff has "the burden of proving by a preponderance of the evidence the facts necessary to establish personal jurisdiction over the defendant." *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001); *Dakota Indus., Inc. v. Dakota Sportswear Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The Court must view all facts in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 861 (D. Minn. 2000).

When reviewing a Rule 12(b)(3) motion to dismiss for improper venue, the Court applies the same standard used for other motions to dismiss. *See Ossman v. Diana Corp.*, 825 F. Supp. 870, 879-80 (D. Minn. 1993). The Court must view all facts and resolve all conflicts in a manner most favorable to the plaintiff, and the defendant, as the movant, has the burden of establishing that the venue is improper. *See United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).

II. **THE COURT HAS SPECIFIC JURISDICTION OVER EVANTHES AND WELSH.**

The parties agree that the law of the Federal Circuit governs personal jurisdiction in this case, and that the Court does not have general jurisdiction over Evanthes and Welsh. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998). (Mem. in Supp. at 3, Docket No. 51; Resp. Mem. at 9, Docket No. 70.) "Pursuant to

Rule 4(k)(1)(A), a federal court addressing personal jurisdiction over a defendant approaches such an inquiry by analyzing the long-arm statute and governing principles of the forum state." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009). "An inquiry into personal jurisdiction involves two steps. We must first decide whether the forum state's long-arm statute permits service of process on [the defendants]. We must then determine whether the assertion of personal jurisdiction in accordance with that long-arm statute would violate the U.S. Constitution's guarantee of due process." *Id.* at 1411 (citations omitted). Minnesota's long-arm statute is co-extensive with the limits of due process, *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn. 1992), and therefore "the two-step personal jurisdiction inquiry coalesces into a single inquiry." *Touchcom*, 574 F.3d at 1411 (citations omitted).

The Federal Circuit has "interpreted *International Shoe* and its progeny as creating a three-pronged approach for determining whether the exercise of jurisdiction is permitted under the Fifth Amendment." *Id.* To show that specific personal jurisdiction exists, the plaintiff must show that, under the first prong, the defendant has "minimum contacts" with the forum state, which means that "the defendant has purposely directed his activities at residents of the forum." *Id.* Specific personal jurisdiction "can exist even if the defendant's contacts are isolated and sporadic." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (internal quotation marks omitted). Under the second prong, the plaintiff must show that "the claim arises out of or relates to the defendant's activities with the forum." *Touchcom*, 574 F.3d at 1411 (internal quotation marks omitted). Under the third prong, "the party over whom jurisdiction is sought [has

the burden] to prove that jurisdiction would be constitutionally unreasonable." *3D Sys.*, 160 F.3d at 1379-80.

### A.   Minimum Contacts Purposely Directed at Minnesota

The Court must evaluate each defendant's contacts with the forum state individually, rather than equating their contacts with the corporation's contacts. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 (1984).

Both Evanthes and Welsh purposely directed their activities at residents of the forum.  Welsh initiated several contacts with Safco and Safco employees, and demonstrated the allegedly infringing cart to a customer in Minnesota.  Even though Evanthes was not physically present in Minnesota during the relevant time period, his contacts satisfy the first prong. *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003).  Evanthes initiated several contacts with several customers headquartered in Minnesota, providing them with information and pricing for the allegedly infringing cart, and sending a demonstration model of the cart to one potential customer.  Evanthes was aware that these customers were headquartered in Minnesota and he intended that the carts be sold in Minnesota.

### B.   Claims Arising out of or Relating to the Minimum Contacts

Safco's claims arise out of and relate to Evanthes' and Welsh's contacts with Minnesota. The Amended Complaint alleges that Welsh and Evanthes directly infringed, contributorily infringed, and/or induced the infringement of the '708 patent. 35 U.S.C.

§ 271(a) states that a person is liable for patent infringement if he "without authority makes, uses, offers to sell, or sells any patented invention." In *Avocent Huntsville Corp. v. Aten International Co.*, the Federal Circuit explained that, "for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum." 552 F.3d 1324, 1332 (Fed. Cir. 2008). These ordinary patent infringement claims "both 'arise[] out of' and 'relate[] to' the defendant's alleged manufacturing, using, or selling of the claimed invention." *Id.*

Sales and attempted sales of the infringing product directed at buyers in the forum state satisfy the second prong. *See Caddy Prods., Inc. v. Greystone Int'l, Inc.*, No. 05-301, 2005 U.S. Dist. LEXIS 34467, at *5 (D. Minn. Nov. 29, 2005) ("The general rule is that when a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant."). In *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, the Federal Circuit concluded that a claim for patent infringement arose out of or directly related to the defendant's activities of soliciting orders from and issuing price quotations to potential customers in the forum state, even though the defendant had never made a sale in the forum state. 160 F.3d at 1378. Demonstrating an allegedly infringing product to potential customers also constitutes unlawful "use" of the infringing product. *See Med. Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1141 (Fed. Cir. 2008). All of Evanthes' and Welsh's contacts with Minnesota involve sales, attempted sales, and demonstrations of

the allegedly infringing cart. Safco's patent infringement claims therefore arise out of and relate to those contacts.

### C. Constitutional Reasonableness

Under the third prong, Evanthes and Welsh have failed to prove by a preponderance of the evidence that jurisdiction would be constitutionally unreasonable. *See 3D Sys.*, 160 F.3d at 1379-80. The relevant factors include

> [1] the burden of the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Avocent*, 552 F.3d at 1331 (internal quotations omitted; alterations in original). A defendant who has purposefully directed his activities at forum residents and seeks to defeat jurisdiction "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Cases in which sufficient minimum contacts exist but the exercise of jurisdiction is unreasonable or unfair are rare. *Elecs. for Imaging*, 340 F.3d at 1352.

Evanthes and Welsh focus exclusively on the first factor, arguing that "[t]he geographic inconveniences impose a burden on Movants in their effort to mount an effective defense in a remote jurisdiction to which they have no real personal ties." (Mem. in Supp. at 7, Docket No. 51.) As Safco notes, however, Evanthes and Welsh, as the sole owners of WelCom, will be involved in this lawsuit regardless of whether the Court has personal jurisdiction over them.

The remaining factors also weigh in favor of the exercise of jurisdiction. Minnesota has an interest in adjudicating disputes over the patents of Minnesota corporations with their principal places of business in Minnesota, and in deterring businesses from marketing and selling infringing products to Minnesota customers. Minnesota, as Safco's home state, is the most convenient forum for Safco. Litigating claims against all defendants in Minnesota will provide the interstate judicial system with a more efficient resolution of the controversy than litigating the claims against some defendants in Minnesota and the claims against other defendants in another forum. Litigation in a single forum also has the potential to provide Safco with more convenient and effective relief. There is no clash between the fundamental social policies of the forum state and any other state related to the action because the Federal Circuit's patent law governs Safco's claims. *Cf. 3D Sys.*, 160 F.3d at 1380.

Viewing the reasonableness factors as a whole, Evanthes and Welsh have not presented a compelling case that this is one of the rare cases in which, despite the existence of minimum contacts, the exercise of jurisdiction is unreasonable.

### D. The Fiduciary Shield Doctrine

Evanthes and Welsh argue that the Court does not have jurisdiction over them as individuals because all of their contacts with Minnesota "have been in their capacities as officers of WelCom, rather than in their individual capacities." (Mem. in Supp. at 2, Docket No. 51.) Some states recognize a "fiduciary shield doctrine," which provides "that a court does not have jurisdiction over an individual whose only alleged contacts with a state are in his capacity as an officer of the defendant corporation." *See, e.g.*,

*Research Res., Inc. v. Dawn Food Prods.*, No. 01-1906, 2001 U.S. Dist. LEXIS 25326, at *11-12 (N.D. Ill. Oct. 9, 2001) (recognizing the defense under Illinois law); *cf. Hypoxico, Inc. v. Col. Altitude Training LLC*, No. 02-6191, 2003 U.S. Dist. LEXIS 11862, at *9-10 (S.D.N.Y. July 14, 2003) (rejecting the defense under New York law).

Neither party addresses the source of law that would protect Evanthes and Welsh, as corporate officers, from jurisdiction where their contacts with the forum state have been in their official capacities. The United States Supreme Court has declined to adopt the fiduciary shield doctrine, *see Calder*, 465 U.S. at 789; *Keeton*, 465 U.S. at 781 n.13, and the Federal Circuit has rejected the doctrine under federal law. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 889 (Fed. Cir. 2008). In considering the doctrine under state law, the Federal Circuit applies the law of the state supplying the applicable long-arm statute, rather than the law of the state where the corporate defendant is incorporated. *See, e.g.*, *Pieczenik*, 265 F.3d at 1335-36; *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1459-60 (Fed. Cir. 1997). "The Minnesota Supreme Court has given no indication that it is inclined to" adopt the fiduciary shield doctrine. *M.G. Incentives, Inc. v. Marchand*, No. C6-00-962, 2001 WL 96223, at *5 (Minn. Ct. App. Feb. 6, 2001); *see also Oakridge Holdings, Inc. v. Brukman*, 528 N.W.2d 274, 278 (Minn. Ct. App. 1995); *cf. Epic Commc'ns, Inc. v. Richwave Tech., Inc.*, 101 Cal. Rptr. 3d 572, 585 (Cal. Ct. App. 2009) (rejecting the doctrine). Because Minnesota's long-arm statute "extend[s] the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal constitution allows," *Valspar*, 495 N.W.2d at 410, the Court declines to adopt the more restrictive reading of Minnesota's long-arm statute that defendants offer here.

Agency law also suggests that the Court's exercise of jurisdiction over Evanthes and Welsh is appropriate. Through their contacts with Minnesota, Evanthes and Welsh were acting as agents of WelCom. Both Evanthes and Welsh attempted to sell the allegedly infringing cart on behalf of WelCom to Minnesota customers. Welsh also demonstrated that cart in Minnesota and entered into settlement negotiations of the patent dispute with Safco on behalf of Welcom. "An officer is an agent of a corporation, and an agent is personally liable for the torts he commits." *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2006 WL 2644985, at *7 (W.D. Mich. Sept. 14, 2006). "The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986). "[T]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). Where the corporate officer "is actively and personally involved in the conduct giving rise to the claim," courts apply the traditional personal jurisdiction analysis. *Id.*

The cases Evanthes and Welsh cite are readily distinguishable. In *Maynard v. Philadelphia Cervical Collar Co.*, for example, the Federal Circuit affirmed the district court's dismissal of the president of the corporate defendant, stating that he did nothing more than engage in an "isolated act of sending a letter to [the plaintiff] in [the forum state] while acting as President of [the corporate defendant]." 18 Fed. Appx. 814, 817

(Fed. Cir. 2001). In *3D Systems*, the court did not consider whether the officer of the corporate defendant contributorily infringed or induced infringement, as Safco alleges here. 160 F.3d at 1380; *see Ideal Instruments v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 614-15 (N.D. Iowa 2006). In *Silent Drive, Inc. v. Strong Industries, Inc.*, the court concluded that "the sending of letters threatening infringement litigation is not sufficient to confer personal jurisdiction . . . . because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice." 326 F.3d at 1202. Here, however, there is no similar unfairness concern because Evanthes and Welsh engaged in acts of alleged infringement directed at the forum state and none of their contacts with the forum state involved threats of suing Safco for infringement.

In summary, the Court finds that the exercise of jurisdiction over Evanthes and Welsh is appropriate, and that the fiduciary shield doctrine does not create an exception to the Court's exercise of jurisdiction. The Court therefore declines to address whether the stream of commerce doctrine or veil piercing provides an alternative basis for the exercise of jurisdiction.

**II.  VENUE**

Evanthes and Welsh also argue that the Court should dismiss the case for improper venue. The venue statute governing patent claims states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The parties do not dispute that venue is proper as to WelCom. *See* 28 U.S.C. § 1391(c). Defendants argue that venue is improper because

neither Welsh nor Evanthes resides in Minnesota, and neither has a "regular and established place of business" in Minnesota.

In *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, the Federal Circuit recognized that a corporate officer's "ownership, control, and active management of the corporation [may] provide sufficient basis for finding that venue [i]s proper." 84 F.3d 1408, 1411 (Fed. Cir. 1996). On the issue of liability, the court held that veil piercing was not appropriate and that the officer was not personally liable for infringement, *id.* at 1412, but nonetheless concluded that there was a "sufficient basis" for venue as to the corporate officer because he "was the president, chief executive officer, and principal shareholder" of the corporation, and because he "made all major decisions concerning the business." *Id.* at 1410-11. Similarly, Evanthes and Welsh are the sole shareholders and only officers of WelCom, and they are "the only two with skin in the game." (Evanthes Dep. at 52.) Evanthes is responsible for sales of all WelCom products everywhere in the world, he sells only WelCom products, and he supervises a handful of additional WelCom sales representatives. (Evanthes Dep. at 6-8.) Welsh, as President and majority owner of WelCom, runs the business and represents it in negotiations with other companies, including Safco. (*See, e.g.*, Welsh Dep. at 157, 160.) Welsh testified that as president and majority owner he "do[es] what [he] want[s] with the money" that WelCom generates. (Welsh Dep. at 41-42.) The Court finds that Evanthes and Welsh make "all major decisions concerning" WelCom and have sufficient "ownership, control, and active management" of WelCom to support venue. *See Hoover Group*, 84 F.3d at 1411.

Therefore, viewing all facts in the light most favorable to Safco, Evanthes and Welsh have failed to establish that venue is improper.[3]

The Court's venue analysis differs from that of *Hoover* in one respect: here, Evanthes and Welsh are potentially liable **both** in their individual capacities and in their official capacities. In *Hoover Group*, the district court had already found the corporate defendant liable for infringement, and in a previous appeal the Federal Circuit had affirmed the finding of infringement. *Id.* at 1410. After that finding of infringement, the plaintiff filed an amended complaint charging the corporate officer "with personal liability for infringement and inducement to infringe." *Id.* In the second appeal, brought solely by the corporate officer, the officer did not dispute the corporation's liability. *Id.* at 1409-10. The only venue question was whether venue was proper "as to corporate employees charged with personal liability for acts taken as individuals." *Id.* at 1410.

Here, under defendants' theory of the case, if Evanthes and Welsh are personally liable at all, they are liable in their official capacities for acts of infringement by the corporation. If they acted as officers and agents of WelCom, and if their acts of infringement were within the scope of their employment, then, under defendants' theory, WelCom itself engaged in infringement and will be liable for its officers' acts of infringement. Under such circumstances, regardless of whether veil piercing is appropriate, "venue for personal liability of a corporate officer/owner for acts of

---

[3] Because additional discovery may reveal that venue is improper as to one or both of the individual defendants, the Court denies the motion to dismiss for improper venue without prejudice. *Cf. Hoodlums Welding Hoods, LLC v. Redtail Int'l, LLC*, No. 4:08-CV-893, 2009 WL 3617479, at *6 n.2 (E.D. Mo. Oct. 28, 2009).

infringement by the corporation . . . may reasonably be based on the venue provisions for the corporation." *Id.* Even if Evanthes' and Welsh's alleged acts of infringement as individuals did not support venue, their official acts on behalf of WelCom would support venue.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Kerry Welsh and John Evanthes' Motion to Dismiss [Docket No. 50] is **DENIED** as follows:

1. The Motion to Dismiss for lack of personal jurisdiction is **DENIED with prejudice**.

2. The Motion to Dismiss for improper venue is **DENIED without prejudice**.

DATED: August 2, 2010              _____s/John R. Tunheim_____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                      United States District Judge